UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,                              Criminal No. 12-200 (JAF)

    v.

JOSE ABEL RAMOS-CRUZ (07);
PEDRO JUAN RAMIREZ-MEDINA (08);
ISMAEL E. CRUZ-RAMOS (09);
LUIS JOEL ROSARIO-SANTIAGO (10);
CARLOS H. O'NEILL-SERRANO (11);
ANGEL L. GARCIA-VELAZQUEZ (12);
PEDRO L. RAMIREZ-RIVERA (13);
MIKE GRACIANI-FEBUS (14);
JOSE LAUREANO-SALGADO (15);
ANTONIO PEREZ-MEDINA (19),

    Defendants.

**O R D E R**

Trial judges enjoy broad discretion in determining how best to respond to problems of

jury management.  See, e.g., United States v. Balsam, 203 F.3d 72, 86 (1st Cir. 2000).  Rule

24(c) of the Federal Rules of Criminal Procedure provides that alternate jurors may replace

jurors who "become or are found to be unable or disqualified to perform their duties." Fed. R.

Crim. P. 24(c).  The determination of whether a juror should be excused pursuant to this rule is

left to the trial judge's discretion.

Criminal No. 12-200 (JAF)                                                      -2-

1        On January 29, 2013, this judge received a letter from Juror #30 asking to be dismissed

2    from jury service.  (Docket No. 621-1).[1]  In her letter, Juror #30 described the emotional and

3    psychological distress she has suffered since her selection to the jury.  She indicated that, after

4    discussing the matter with her husband, they agreed she should visit her psychiatrist for an

5    evaluation.  Attached to the letter was the certification of medical evaluation performed by

6    Carlos J. Arias-Boneta, M.D.  (Docket No. 621-1 at 2.)  Dr. Arias-Boneta indicated that in his

7    opinion Juror #30 was unfit for jury service.

8        The defendants have raised concerns about possible juror misconduct related to the cause

9    and nature of Juror #30's departure from the jury.[2]  Here, however, there is no colorable claim

10   of juror misconduct.  See United States v. Boylan, 898 F.2d 230, 258 (1990) ("When a

11   colorable claim of jury misconduct surfaces the district court has broad discretion to determine

12   the type of investigation which must be mounted.").  Nevertheless, we felt it prudent to conduct

13   an inquiry on January 31, 2013, to satisfy all parties about the absence of any misconduct.

14       Limiting the scope of our inquiry to "what [was] absolutely necessary to determine the

15   facts with precision" Boylan, 898 F.2d at 258 (citation omitted), the court asked that Juror #30

16   attend an in-camera interview.  We invited defense counsel to attend.  (Docket No. 651.)

17   Defense counsel requested that the interview with Juror # 30 be conducted in the presence of

18   defense counsel and defendants.  In my judgment, defendants suffered no loss by not being

---

[1] The letter and the accompanying medical certificate were written in Spanish.  At the hearing held on January 31, 2013, the first order of business was to have those documents translated into the record by a staff interpreter.

[2] We note for the record that we have broad investigatory authority to develop a course of inquiry designed to uncover juror misconduct where there is a colorable claim of juror misconduct.  See United States v. Barone, 114 F.3d 1284, 1307 (1st Cir. 1997); United States v. Angiulo, 897 F.2d 1169, 1185 (1st Cir. 1990); United States v. Hunnewell, 891 F.2d 955, 961 (1st Cir. 1989); United States v. Williams, 809 F.2d 75, 85 (1st Cir. 1986); United States v. Corbin, 590 F.2d 398, 400 (1st Cir. 1979).

Criminal No. 12-200 (JAF)                                                                -3-

1   present during the in-camera interview.  See Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th

2   Cir. 1994) (defendant's absence from the court's in-camera questioning and interview of juror

3   over potential juror misconduct was not prejudicial to defendant's interests).  Moreover, we fail

4   to see why it is necessary to submit this juror to further anxiety.  She was precisely scared of the

5   Defendants, and it would be irresponsible to confront a depressed, anxious person with the fear

6   – real or not, that brought about her concerns.  After all, it is a long-established principle that

7   jurors, as private citizens performing a valued civic function, "should not be subjected to undue

8   impositions."  United States v. Lemmerer, 277 F.3d 579, 592 (1st Cir. 2002).

9          As stated, on January 31, 2013, the undersigned interviewed the juror, in the presence of

10  defense counsel.[3]   We questioned the juror extensively, including questions proposed by

11  defense counsel, and she answered readily.  The undersigned found her to be forthcoming and

12  credible.  Juror # 30 said that after her selection she suffered from insomnia, shortness of breath,

13  night terror, and a lack of appetite.  She said she spoke only to her psychiatrist, her mother, and

14  her husband about her fear and anxiety.  She does not work with or know any of the other

15  jurors.  During the selection process she did not become friendly with any of the other jurors.

16  Since trial has not started and the jury is not sitting currently, she has not had any other

17  opportunity to interact with other jurors.  She indicated in clear and decisive terms that she did

_____

[3] Attorney Francisco J. Adams Quesada was unable to attend the in-camera interview because of a calendar conflict.  However, his client was positioned, as recognized in the brief submitted to the court by Attorney Adams, in the same way as his co-defendants with regard to the hearing.  (Docket No. 645.)  Additionally, Attorney Adams did not submit to the court any separate questions for consideration.  The court could not afford to delay proceedings on this emergency matter for fear that delay might risk potential juror misconduct or contamination. Defendant was not materially harmed by counsel's absence. See Siripongs, 35 F.3d 1308, 1321 (9th Cir. 1994) (counsel's absence from the court's in-camera questioning and interview of juror over potential juror misconduct was not prejudicial to defendant's interests; court found that nothing counsel could or would have said would change the decision).

Criminal No. 12-200 (JAF)                                                                    -4-

1    not communicate her fears or anxieties to any other member of the jury.  Nothing in her

2    testimony raises any concern that she has spoken to or tainted the other members of the jury.

3           Juror #30 is not fit to serve on the jury.  Nothing in the rule or case law suggests that we

4    must temper our discretion by performing any particular test to determine whether a juror is

5    competent.  See United States v. Corsino, 812 F.2d 26, 33 (1st Cir. 1987); United States v. Gay,

6    967 F.2d 322, 324 (9th Cir. 1992); see also United States v. Wilson, 894 F.2d 1245 (11th Cir.

7    1990) (approving dismissal of ill juror); United States v. Armijo, 834 F.2d 132 (8th Cir.1987)

8    (affirming replacement of juror who was involved in a car accident); United States v. Stratton,

9    779 F.2d 820 (2d Cir.1985) (approving dismissal of juror who required delay to observe

10   religious holiday).  The court has made a careful study of the situation and we are confident,

11   especially upon reviewing her medical evaluation, that Juror # 30's mental condition is unstable

12   and that she could not adequately and fairly hear and deliberate on the matters that will be

13   discussed in this case.  Following the parameters of Rule 24(c), she will be excused and the first

14   alternate will replace her.  See Fed. R. Crim. P. 24(c).  This is no prejudice to the parties, as

15   none of the jurors have heard testimony in the case and there are still three (3) remaining

16   alternates.

17          Defendants have asked the court to bring the rest of the jurors in, one-by-one, for

18   questioning to determine whether juror misconduct has taken place. We decline to do so.  While

19   defense counsel thinks polling the other jurors about whether Juror # 30 communicated any of

20   her anxieties to them would be helpful, we think there is a significant chance that doing so

21   would pollute the entire pool: This judge's questions may lead them to be suspicious of one

22   another, or cause them to have their own concerns about the dangers posed by the defendants in

Criminal No. 12-200 (JAF)                                                         -5-

1   this case.  Since there is no indication that they might have been tainted by juror misconduct,

2   the court declines to expose the rest of the jury pool to this risk.  As such, we find that

3   substituting an alternate for Juror # 30 is sufficient to ensure an untainted jury in this case.

4           Here, however, we reiterate that there is no colorable claim of juror misconduct.  Even if

5   the circumstances of this case did suggest juror misconduct, we are satisfied of the security of

6   the jury pool because of the inquiry the undersigned has undertaken.  See United States v.

7   Chorney, 63 F.3d 78, 81 (1st Cir. 1995) ("[w]here the trial judge takes the time to hear counsel

8   and thoughtfully weighs the options, we will not second guess the decision unless the balance

9   struck is manifestly unreasonable."); see also United States v. Doe, 513 F.2d 709-711-12 (1st

10  Cir. 1975); Hunnewell, 891 F.2d at 961 (a judge's "determination that the jury has not been

11  soured deserves great respect").  This judge interviewed the juror, asked her our own questions

12  and those of defense counsel, and we are  confident both that she is medically unfit to sit on the

13  jury and that no other juror is affected by her unfitness.  We have employed a suitable

14  framework for investigating any possible misconduct allegation, and we are satisfied that the

15  jury has not been polluted.

16          That completes our analysis, except to note certain unsatisfactory features present in the

17  flurry of briefs filed on this issue by defense counsel.

18          The brief filed by Attorney Sandoval cites Arizona v. Fulminante, 499 U.S. 279 (1991),

19  to support her proposition that this court cannot excuse the juror in question prior to the start of

20  trial on February 5, 2013, because this "would constitute structural error."  (Docket No. 649.)

21  That case involved the assessment of voluntary confessions under the Fourteenth Amendment.

22  In the Supreme Court's opinion, the majority drew a distinction between "trial errors," which

Criminal No. 12-200 (JAF)                                                                    -6-

1    occur during the presentation of the case to the jury and are subject to harmless-error analysis,

2    and "structural defects" in the trial mechanism itself, which are not amenable to harmless-error

3    analysis.  <u>Fulminante</u>, 499 U.S. at 309-10.  The resemblance of that case to the present one is

4    entirely absent.

5          This judge wants to make clear now to defense counsel that this kind of loose

6    workmanship does not help the court or the rights which counsel wish to protect.  We not only

7    read counsel's briefs, but also check citations; obscuring case precedent either to cloud the

8    court's better judgment or because of laxity does little to advance the interests of your clients.

9          To conclude, Juror # 30 will be excused and alternate #1 will be her replacement.

10   **IT IS SO ORDERED.**

11   San Juan, Puerto Rico, this 1st day of February, 2012.

12                                 s/José Antonio Fusté
13                                 JOSE ANTONIO FUSTE
14                                 United States District Judge